UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JORDAN TENNESSEE, Jr., CDCR #BC-4511,<br><br>                              Plaintiff,<br><br>  vs.<br><br>F. CAMACHO, Correctional Officer;<br>P. PLASCENCIA, Correctional Sergeant;<br>MULTIPLE JOHN DOES;<br>MULTIPLE JANE DOES,<br><br>                              Defendants. | Case No.:  25-cv-2027-DMS-KSC<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND SCREENING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(a)**<br><br>**[ECF No. 2]** |

Plaintiff Anthony Jordan Tennessee, Jr., proceeding pro se and currently incarcerated at California State Prison, Sacramento ("CSP-SAC") in Represa, California, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, together with a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a).  (*See* ECF Nos. 1, 2.) Plaintiff claims two named and various unnamed correctional officials at Richard J. Donovan Correctional Facility in San Diego ("RJD") violated his Eighth and Fourteenth Amendment rights on and after an October 27, 2023 altercation on RJD's A Yard.[1]  (*See*

---

[1] The Court takes judicial notice that Plaintiff filed a separate civil rights action in this Court on the same day in *Tennessee v. Enriquez, et al.*, S.D. Cal. Case No. 25-cv-2026-LL-JLB (ECF No. 1) (filed August

1

ECF No. 1 at 3, 8.)  He seeks $500,000 in general and punitive damages and demands a jury trial. (*Id.* at 7.)

For the reasons explained, the Court **GRANTS** Plaintiff's Motion to Proceed IFP and **SCREENS** his Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  The Court finds that while Plaintiff adequately alleges an Eighth Amendment excessive claim against Defendant Plasencia, he fails to state any plausible claim for relief against any other named or unnamed Defendant.  Therefore, the Court **ORDERS** Plaintiff to either file an Amended Complaint that addresses the pleading deficiencies explained below, or to file a Notice of Intent to Proceed with the excessive force claims alleged in his current Complaint against Defendant Plascencia only.

**I.  MOTION TO PROCEED IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[2]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

/ / /

---

4, 2025) ("*Enriquez*").  *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases.").  In *Enriquez,* however, Plaintiff seeks to sue different RJD correctional officials who are alleged to have used excessive force and refused him medical attention during a cell extraction on November 22, 2023—nearly a month after the excessive force incident at issue in this case. *See Enriquez*, ECF No. 1 at 1–6. Nowhere in either pleading does Plaintiff claim the two incidents are related.

[2]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023).  The $55 administrative portion of the fee does not apply to persons granted leave to proceed IFP.  *Id.*

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' … the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)).  Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  Using this financial information, the court "shall assess and when funds exist, collect, … an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)).  Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Here, Plaintiff's Motion to Proceed IFP complies with both 28 U.S.C. § 1915(a)(1) and (2).  In support, Plaintiff has submitted a prison certificate authorized by a CSP-SAC accounting officer and certified copies of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Trust Account Statement Report (ECF No. 2 at 5–7).  *See* S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119.  These documents show Plaintiff maintained an average monthly balance of $9.75 in his prison trust account, and had $5.00 in average monthly deposits credited to his account over the 6-month period immediately

preceding the filing of his Complaint. At the time of filing, however, Plaintiff's available balance was only $.18. (ECF No. 2 at 5, 7.)

Accordingly, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses an initial partial filing fee of $1.95 pursuant to 28 U.S.C. § 1915(b)(1). This initial fee need be collected, however, only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The CDCR must thereafter collect the full balance of the $350 total fee owed in this case and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

## II.  SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(a)

### A.  Standard of Review

Because Plaintiff is a prisoner and proceeding IFP, his Complaint requires an initial screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C. § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir.

2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When conducting its initial screening, the Court must be mindful of its "obligation where the petitioner is pro se, particularly in a civil rights case, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). It may not, however, "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B.   Factual Allegations**

Plaintiff, who identifies as an enhanced outpatient prisoner ("EOP") at RJD,[3] alleges that on October 27, 2023, he "needed some air" and felt like the "walls were closing in on [him]," so he exited his housing unit during a medication call. (ECF No. 1 at 3.) Officer Burns confronted him, asked him to go back inside, and activated her alarm as other officers arrived. (*Id.*) Defendant Camacho told Plaintiff to "take a seat by the building or stand if [he] needed some air," and Plaintiff complied. "[D]ue to [his] mental health crisis," however, Plaintiff alleges he was "unable to stay in the same position" and "got up." (*Id.*) In response, another alarm was activated, and "more than 20 officers with body cameras" approached. (*Id.*)

---

[3] "The Enhanced Outpatient Program (EOP) is for inmates with 'acute onset or significant decompensation of a serious mental disorder.' […] EOP programs are located in designated living units at 'hub institution[s].'" *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1075 (E.D. Cal. 2014).

 Plaintiff alleges Officer Enriquez was "leading the pack," but "calmly direct[ed] the situation," saw that Plaintiff "was not a threat," and "prevented the other officers from implementing their own agendas." (*Id.*) Plaintiff asked the officers "not to circle around because of [his] PTSD and anxiety," but the group of officers surrounded him and ordered him to "cuff up." (*Id.*)[4]

 Plaintiff next alleges he saw Sgt. Plasencia "storming from the side," saying "I or we are tired of your shit." (*Id.*) As Plasencia "unholstered her monadnock expandable baton," Plaintiff claims he "immediately" stopped, placed both of his opened hands straight in the air, declared himself "non-violent," and waited for the next "lawful order." (*Id.*) Nevertheless, Plascencia "swung her baton at [Plaintiff's] knees," Plaintiff fell to the ground, and was "hit in the head with a baton from behind." (*Id.*) "Dizzy and daz[]ed," Plaintiff placed both hands on his head and discovered he was "profusely bleeding from [his] forehead." (*Id.*) Plaintiff next claims to have "lay down on [his] stomach on the ground" and lost consciousness, only to be awakened by "numerous officers punching and kicking [him] while they jerk[ed] [his] arms behind [his] back." (*Id.* at 8.) Plaintiff avers "at no time was [he] resisting or moving" during the incident, and was sent to an outside hospital where he "received numerous staples in [his] forehead." (*Id.*)

 Upon his return to RJD, Plaintiff further claims to have been "retaliated against with a false RVR [Rules Violation Report] for staff assault." (*Id.*) As a result, he "was placed in the lockup RHU [Restricted Housing Unit] for more than a year." (*Id.*) He now seeks $500,000 in general and punitive damages against Officer Camacho, Sgt. Plascencia, and "multiple" John and Jane Doe Correctional Officers, alleging they used excessive force, failed to protect, and deprived him of liberty without due process by filing fabricated and retaliatory disciplinary charges against him. (*Id.* at 3, 7.)

///

---

[4] Neither Officer Burns nor Officer Enriquez are named as Defendants.

**C.     Discussion**

The Court has conducted its initial screening of Plaintiff's Complaint and finds it contains Eighth Amendment excessive allegations involving Defendant Plascencia sufficient to survive the "low threshold" set for *sua sponte* screening. *See Watison,* 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121, 1123. Plaintiff's remaining claims involving Defendant Camacho and all unidentified Does however, fail to state any plausible claim for relief and are subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for the reasons explained below.

1.     <u>Excessive Force – Defendants Plascencia & Camacho</u>

Unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). For claims arising out of the use of excessive physical force, the Court considers "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted).

Plaintiff alleges Sgt. Plascencia hit him with a baton with enough force to cause him to fall to his knees despite the fact that he held his hands straight in the air, declared himself "non-violent," and was simply waiting for a "lawful order." (ECF No. 1 at 3.) Plaintiff further alleges to have been hit with a baton in the head from behind *after* he had already fallen to the ground. (*Id.*) While he does not specify who who landed the head blow, the facts contained in his Complaint, including Plaintiff's allegation that it was Plascencia who "storm[ed] from the side," held a baton, and exclaimed she was "sick of [Plaintiff's] shit," when liberally construed in Plaintiff's favor, plausibly support an excessive force claim against her. *See* ECF No. 1 at 3; *Iqbal,* 556 U.S. at 678; *Hudson*, 507 U.S. at 7. *See also Hughes v. Rodriguez*, 31 F.4th 1211, 1222 (9th Cir. 2022) (affirming denial of summary judgment for officers alleged to have beaten and permitted a canine to bite prisoner "after he was fully subdued."); *Duclos v. Smith*, No. 1:24-CV-00515-HBK (PC), 2024 WL 5508219, at *3 (E.D. Cal. June 24, 2024) (finding prisoner who struck so forcefully in the

face that he "dropped to the ground immediately," but alleged not to have posed any credible threat to a group of five officers simply by "raising [his] hands" and asking what they were doing adequately alleged an Eighth Amendment excessive use of force claim); *Quinones v. Parr*, No. 3:20-CV-00390 MMD CLB, 2021 WL 8321869, at *3 (D. Nev. Oct. 28, 2021) (finding prisoner's allegations of having been tased and beaten by officers "after they found him sitting against a wall with his legs crossed, hands in the air, and compliant" sufficient to survive screening pursuant to 28 U.S.C. § 1915A).

Plaintiff fails to state a plausible Eighth Amendment claim against Officer Camacho however. In fact, Plaintiff alleges only that Camacho directed him to sit or stand near the building if he needed some air. (ECF No. 1 at 3.) Plaintiff attributes no further action or use of force to Camacho, and he fails to even minimally explain what role, if any, Camacho played in any events that followed. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A person deprives another of a constitutional right under section 1983, where that person "'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Thus, as pleaded, while Plaintiff's excessive allegations against Sgt. Plascencia are sufficient to survive initial screening, his allegations against Officer Camacho fail to state a claim for relief and are dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. John and Jane Doe Defendants

The Federal Rules of Civil Procedure do not authorize or prohibit the use of fictitious parties, but Rule 10 does require a plaintiff to include the names of all parties in his complaint. *See* Fed. R. Civ. P. 10(a).[5] Therefore, in a section 1983 suit, the "plaintiff may

---

[5] Doe pleading is especially disfavored in an IFP case because in the event Plaintiff alleges a plausible claim for relief, it is effectively impossible for the United States Marshal or deputy marshal to fulfill his

refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must [also] allege specific facts showing how each particular doe defendant violated his rights." *Cuda v. Employees/Contractors/Agents at or OCCC*, 2019 WL 2062945, at *3–4 (D. Haw. May 9, 2019).

Here, Plaintiff includes "multiple" unidentified John and Jane Doe Officers as Defendants in the caption of his pleading—but he fails to specify what any of the Does either did or failed to do to cause unconstitutional harm. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). While Plaintiff refers to "responding officers," a "pack of officers," and a "crowd of more than 20 officers with body cameras" who are alleged to have arrived after alarms were activated, *see* ECF No. 1 at 3, officers may not be held liable based only upon "membership in a group without a showing of individual participation in unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). Officers may be held liable under the Eighth Amendment for failing to intercede in situations where excessive force is alleged to have been employed by others, but Plaintiff must include facts sufficient to plausibly show that each individual officer he seeks to hold liable under a failure to protect or intercede theory had the opportunity to do so. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000)).

By failing to describe each individual responding officer's personal participation in the October 27, 2023 incident, Plaintiff also fails to state a claim against any of the unidentified Does. *See, e.g., Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 960–61

---

or her duty to serve an unnamed defendant. *See* Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d); *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant."); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant.").

(S.D. Cal. 1996) (finding dismissal proper where complaint accused "all defendants of all types of infringement," but it was "unclear which of the five is accused of which type of infringement" because complaint "lumps together . . . multiple defendants in one broad allegation"); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1070–71 (N.D. Cal. 1988) (dismissing complaint that "lumped" all defendants "together in a single, broad allegation" without "stating with any specificity how each private defendant allegedly deprived [plaintiff] of a right secured by the Constitution" ).

For these reasons, all purported claims for relief against Multiple John and Jane Doe Defendants are dismissed *sua sponte* for failure to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Due Process & Retaliation

Finally, Plaintiff claims he "was retaliated against with a[] false RVR for staff assault," and was placed in the "lockup RHU" in violation of due process. (*See* ECF No. 1 at 8.)

The Due Process Clause of the Fourteenth Amendment protects prisoners from deprivations of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)); *see also Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022). Liberty interests protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1180 (9th Cir. 2022). Where a protected liberty interest arises, due process requires written notice of the charges and

evidence relied on and the reasons for the action taken, an opportunity "to call witnesses and present documentary evidence in [ ] defense when" doing so "will not be unduly hazardous to institutional safety or correctional goals," assistance at the hearing if necessary, and an impartial factfinder.  *Wolff*, 418 U.S. at 564–71.

Here, even assuming Plaintiff's placement "in the lockup RHU for more than a year" by itself is sufficient to invoke a protected liberty interest under *Sandin*, *cf. McNeil v. Molnar*, No. 18-CV-01594-RFB-BNW, 2024 WL 1345198, at *2 (D. Nev. Mar. 28, 2024) (finding 24-months of solitary disciplinary segregation, maximum of two visitors in a six-month period; and denial of other privileges sufficiently "atypical and significant" to invoke [liberty interest), *aff'd,* No. 24-2733, 2025 WL 2541910 (9th Cir. Sept. 4, 2025), he fails to further specify which, if any, of *Wolff's* procedural protections were violated during the disciplinary proceedings that allegedly resulted in his segregation.  *See e.g.*, *Johnson*, 55 F.4th at 1180.  He further fails to attribute any particular procedural error to any of the named (or unnamed) Defendants.  *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (plaintiffs must "set forth specific facts" as to each individual defendant's wrongdoing to hold each liable under § 1983).  Plaintiff thus fails to plausibly allege a due process violation arising from the "false RVR" charging him with staff assault or the disciplinary proceedings that followed the October 27, 2023 incident.  *See Iqbal*, 556 U.S. at 678; *see also Goodlow v. Estrada*, No. 24-CV-1490-AJB-SBC, 2025 WL 268111, at *3 (S.D. Cal. Jan. 22, 2025) (dismissing prisoner's disciplinary due process claims *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A for failure to identify the denial of any of any of *Wolff's* specific "procedural protections.").

Put another way, Plaintiff's conclusory allegation that disciplinary charges were filed against him based on false assertions that he "attempted to attack and swing [a] clenched fist at Sgt. Plascencia," *see* ECF No. 1 at 8, fails to state a claim because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports." *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997).  "The allegation of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C.

§ 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves." *Gadsden v. Gehris*, No. 20cv0470 WQH (DEB), 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020).

With respect to Plaintiff's additional reference to the "retaliatory" nature of the "false RVR," *see* ECF No. 1 at 8, this allegation is simply too conclusory to state a retaliation claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a § 1983 claim). The Ninth Circuit has "repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient" to state a retaliation claim. *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of [her] First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse action and conduct protected by the First Amendment. *Watison*, 668 F.3d at 1114; *see also Bird v. Dzurenda*, 131 F.4th 787, 790–91 (9th Cir. 2025).

As currently pleaded, Plaintiff's due process and retaliation allegations meet none of these pleading requirements. Therefore, they are also dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

4. <u>Leave to Amend</u>

In sum, while the Court finds Plaintiff's Complaint sufficiently alleges an Eighth Amendment excessive force claim against Sgt. Plascencia, it fails to allege any other plausible claim for relief. Therefore, it will grant Plaintiff an opportunity to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### III.  CONCLUSION

For the reasons discussed, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $1.95 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Phillips' account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DISMISSES** all claims against Defendants F. Camacho, Multiple John Does, and Multiple Jane Does based on Plaintiff's failure to state a plausible claim for relief against any of them pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

5. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (A) file a Notice of Intent to Proceed with his excessive force claims against Sgt. Plascencia only; *or* (B) file an Amended Complaint that corrects all the deficiencies of pleading identified in this Order.

If Plaintiff files a Notice of Intent to proceed against Sgt. Plascencia only, the Court will direct the U.S. Marshal to effect service of process upon Sgt. Plascencia on his behalf pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

If Plaintiff instead chooses to amend, his new pleading must be clearly titled as his Amended Complaint, contain S.D. Cal. Civil Case No. 25-cv-2027-DMS-KSC in its

caption, and be complete in itself without reference to his original Complaint. Defendants not named and any claim not realleged in Plaintiff's Amended Complaint, *including the currently sufficient excessive force claim alleged against Sgt. Plascencia*, will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

**IT IS SO ORDERED**.

Dated: November 17, 2025

_____
Hon. Dana M. Sabraw
United States District Judge